IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| GENETTE GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01165-STA-tmp |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Genette Gordon filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 17, 2012. On January 29, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on April 11, 1961. She alleges disability beginning in 2009, due to rheumatoid arthritis and back pain. She has past relevant work as a production assembler.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2013; (2) Plaintiff has not engaged in substantial gainful

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

activity since her alleged onset date; (3) Plaintiff has the following severe impairments: rheumatoid arthritis and obesity; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) including the ability to lift twenty pounds occasionally and ten pounds frequently; stand and walk for up to two hours and sit for up to six hours in an eight hour day; occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; frequently handle and finger objects bilaterally; occasionally use her bilateral lower extremities to operate foot controls; she must avoid even moderate exposure to extreme cold and heat and concentrated exposure to pulmonary irritants such as dust fumes gases and poorly ventilated areas; and she must avoid all exposure to the operational control of moving and hazardous machinery and unprotected heights; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a limited education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because Plaintiff's past relevant work was unskilled; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The

---

[8] R. 25-30.

[9] 42 U.S.C. § 423(d)(1).

initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are substantial numbers of jobs that exist in the national economy that she can perform.

---

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred by not properly weighing the medical opinions in the record. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[14] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[15] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[16] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[17]

In contrast, it is well-established that the findings and opinions of treating physicians are entitled to substantial deference.[18] A treating physician's opinion is entitled to substantially

---

[14] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

[15] *Id.* §§ 404.1502, 404.1527(c)(2).

[16] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[17] 20 C.F.R. § 404.1527(c).

[18] *See Walters*, 127 F.3d at 529–30; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

greater weight than the contrary opinion of a non-examining medical advisor.[19] If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.[20] Furthermore, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."[21]

Closely associated with the treating physician rule, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."[22] Moreover, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[23]

In the present case, the ALJ gave great weight to the opinion of examining consultant Leonard Hayden, M.D., because his findings were consistent with his examination of Plaintiff

---

[19] *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

[20] 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

[21] *Blakley*, 581 F.3d at 406 (citation omitted.).

[22] *Id.* (citation omitted.).

[23] *Id.* (citation omitted.).

and with the record as a whole. Dr. Hayden concluded that, in an eight-hour workday: Plaintiff could lift and carry up to ten pounds frequently and up to twenty pounds occasionally and could stand and walk for six hours; she could frequently handle, finger, feel, push, and pull with both arms; she could frequently climb stairs and ramps, stoop, crouch, but could not kneel or crawl during a workday for any length of time; and she could work around moving mechanical parts and operate a motor vehicle frequently but would not likely tolerate working at unprotected heights or in extreme temperatures.[24] Plaintiff displayed good grip strength and muscle strength. In addition, she walked with a normal gait and could balance on each foot separately. She also showed normal ranges of motion in her feet and hands, with no notable deformities of her finger joints.[25] Because Dr. Hayden's opinion was supported by other evidence in the record, including his own examination notes, the ALJ could properly assign the opinion great weight.[26]

The ALJ also assigned great weight to the opinions of state agency medical consultants C. Bancoff, M.D., and Navjeet Singh, M.D. Dr. Bancoff and Dr. Singh both found that, in an eight-hour workday, Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours, sit for about six hours, and only occasionally perform postural activities.[27]

In addition, Dr. Singh opined that Plaintiff could frequently perform manipulative functions, such as reaching, handling, fingering, and feeling, based, in part, on Dr. Hayden's

---

[24] R. 426.

[25] *Id.* at 425.

[26] The more a medical source presents relevant evidence to support an opinion, the more weight an ALJ will give that opinion. 20 C.F.R. § 404.1527(c)(3).

[27] R. 483-84, 501-02.

findings that Plaintiff had good grip and muscle strength and appeared able to perform a range of light work with some environmental and manipulative restrictions.[28]

Dr. Bancoff pointed out that the medical evidence revealed no evidence that Plaintiff's rheumatoid arthritis was causing current swelling.[29] Dr. Bancoff also noted that the record showed that Plaintiff could walk with a normal gait without using an assistive device.[30] Because Dr. Bancoff's and Dr. Singh's opinions were consistent with and supported by the record as a whole, the ALJ properly assigned the opinions great weight.[31]

The ALJ assigned little weight to an opinion signed by Stanley King, P.A., and Volker Winkler, M.D. After examining Plaintiff, Mr. King and Dr. Winkler opined that, during an eight-hour workday, Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently, sit for four hours, and stand or walk for four hours; they also opined that Plaintiff needed to shift positions frequently for comfort and could only occasionally perform manipulative and postural activities.[32] Although the opinion was signed by Dr. Winkler, Mr.

---

[28] *Id.* at 502-05. The ALJ included additional limitations in the residual functional capacity beyond those assessed by Dr. Singh. In particular, the ALJ found that Plaintiff could stand and walk for only two hours in an eight-hour workday and could only occasionally use her legs to operate foot controls.

[29] *Id.* at 367-72, 432-37, 483, 686-89.

[30] *Id.* at 483.

[31] *See* 20 C.F.R. § 404.1527(c)(4).

[32] R. 923-25.

King (not Dr. Winkler) performed the actual examination.[33]  The ALJ correctly noted that Mr. King, as a physician's assistant, was not an acceptable medical source under the regulations.[34]

Additionally, the ALJ gave the opinion little weight because it was inconsistent with the record as a whole. For example, although Mr. King and Dr. Winkler opined that Plaintiff had muscle weakness and decreased grip strength, Mr. King observed full muscle strength in all muscles on examination.[35] Mr. King and Dr. Winkler opined that Plaintiff took high-risk medication daily for pain relief, but Plaintiff told Mr. King that the medication offered fair relief, reducing her pain to around a five out of ten.[36] Moreover, she testified at the hearing that she took the pain medication hydrocodone only about four times per week.[37]  The opinion of Mr. King and Dr. Winkler was unsupported by the record as a whole, and, thus, the ALJ properly assigned it little weight.

Plaintiff complains that the ALJ failed to discuss the January 7, 2010, opinion of consultative examining physician John Woods, M.D.  However, Dr. Woods completed his opinion during a previously adjudicated period, which the ALJ in this case explicitly declined to reopen.[38]

---

[33] *Id.* at 919-21.

[34] *See* SSR 06-03p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'").

[35] R. 920, 924, 926.

[36] *Id.* at 919-20, 927.

[37] *Id.* at 49, 927.

[38] *Id.* at 70-78, 347-52.

Although a physician's opinion about what a claimant can and cannot do is relevant evidence, that opinion is not determinative because the ALJ has the responsibility of assessing the claimant's residual functional capacity.[39] The responsibility for deciding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's residual functional capacity, and the application of vocational factors rests with the Commissioner.[40] Opinions on these issues "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."[41] "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."[42] Consequently, the ALJ in this case acted within her authority.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[43] The Commissioner may carry this burden by applying the medical-vocational grids[44] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on

---

[39] *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2012).

[40] *See* 20 C.F.R. § 404.1527(e).

[41] 20 C.F.R. § 404.1527(e); *see* SSR 96-5p, 1996 WL 374183 (1996).

[42] *Coldiron*, 391 F. App'x at 439; *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 722 (6th Cir. May 7, 2012) (discounting claimant's assertion that ALJ overstepped authority in interpreting school records).

[43] *Jones*, 336 F.3d at 474.

[44] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

whether the claimant has transferable work skills.[45] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the testimony of a vocational expert may be used to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[46]

Here, the ALJ relied on the testimony of a vocational expert in determining that there were significant numbers of jobs in the national economy that Plaintiff could perform.[47] The vocational expert's testimony was in response to a hypothetical question that set forth all the reasonable limitations Plaintiff had on her ability to work and, therefore, the ALJ properly relied on that testimony in her decision.[48] The vocational expert's testimony provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled. Because substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Act during the relevant period, the decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 6, 2017.

---

[45] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[46] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[47] R. 29.

[48] *See Foster*, 279 F.3d at 356-57.